O

# United States District Court
# Central District of California

| | |
|---|---|
| TIFFANY MEJIA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>INGLEWOOD SPORTSERVICE, INC., et al.,<br><br>　　　　　Defendants. | Case № 2:20-cv-09564-ODW (MRWx)<br><br>**ORDER GRANTING IN PART AND DENYING PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [22]** |

## I.    INTRODUCTION

Plaintiff Tiffany Mejia brings this suit against her employers, Defendants Inglewood Sportservice, Inc. and Delaware North Companies, Incorporated (together, "Sportservice"), for alleged wage-and-hour violations committed in connection with pre-entry security checks. Sportservice moves for summary judgment on all seven of Mejia's claims. (Mot. Summ. J. ("Mot." or "Motion"), ECF No. 22.) The Motion is fully briefed. (*See* Opp'n, ECF No. 28; Reply, ECF No. 29.) For the following reasons, the Court **GRANTS in PART** and **DENIES in PART** the Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. FACTUAL BACKGROUND

The following allegations and facts are undisputed, unless otherwise noted. Sportservice is a food service and hospitality company. It provides concessions and other services at events held at The Forum, a concert venue owned and operated by a third party. (Defs.' Statement of Uncontroverted Facts ("DSUF") 1–2, ECF No. 22-3.) On January 7, 2019, Mejia commenced her employment, and remains employed, with Sportservice. (DSUF 73, 74.)

The Forum requires security checks for all employees and guests entering The Forum for any reason. (DSUF 11–13, 15.) Pursuant to this requirement, Mejia was required to undergo said security checks before entering The Forum and clocking in for work, but Sportservice did not compensate Mejia for the time spent undergoing these checks. (Pl.'s Statement of Genuine Disputes ("PSGD") & Additional Material Facts ("PAMF") 76, 78, ECF No. 28-1.) The parties dispute several of the following facts pertaining the time Mejia spent undergoing the security checks when entering The Forum at the beginning of shifts and after meal and rest breaks.

### *Security Checks Before Clocking In*

Although the parties do not dispute that The Forum requires security checks, they do dispute whether Sportservice *also* requires the checks. (*See* PSGD 17, 18.) Accordingly, the parties also dispute whether Sportservice has any rules restricting what Mejia could do prior to clocking in to work. (*See* PSGD 19.)

The parties agree that Sportservice itself did not actually conduct the security checks. (DSUF 59.) Instead, pursuant to the policies and procedures of The Forum and its third-party security vendor, upon an employee's arrival at one of the predesignated security check stations, a security agent would check the employee's name against a list to verify their identity and give them a wristband. (PSGD 3.) The employee would then undergo a pass-through security screening which involved waiting in line, inspection of pockets and bags, and passing through a metal detector. (*Id.*) While waiting in line, Mejia and other employees were able to engage in

personal activities, including using their smartphone. (DSUF 49.) Again, the parties agree that Sportservice did not directly execute any part of this security check process.

That said, the parties also agree that Sportservice's policies, entitled *Inglewood Sportservice Unit Work Rules* (the "Work Rules") clearly recognized The Forum's security check policies. (DSUF 10, 43.) Specifically, the Work Rules instructed employees to enter The Forum at certain locations to undergo security checks, including passing through a metal detector and submitting to a pat-down screening if necessary. (PSGD 3.) The Work Rules further provide that "[a]ny associate who refuses to comply with security screening and/or any CSC Security directive may be subject to disciplinary action up to and including termination." (*Id.*)

In September 2019, Mejia was disciplined for violating the Work Rules by entering The Forum through an improper entrance. (PAMF 77.)

### *Meal Breaks*

Sportservice had a written meal and rest break policy (the ("Policy"), and upon hire, Mejia received, read, and understood the Policy. (DSUF 40, 41, 44, 65.) In accordance with California law, the Policy provides that employees in non-exempt positions are required to take a mandatory unpaid meal break (30–60 minutes per their arrangement with their supervisor). (DSUF 46.) The Policy further provides that if employees work more than 5 hours, they will be scheduled for one meal break; however, if the employees work between 5 and 6 hours, they can waive the meal break through a mutual consent with their employer. (DSUF 46.) Any such employees who work more than 10 hours will be scheduled for a second meal break. (*Id.*) The Policy provides that all employees may leave the premises during meal breaks if they so choose. (*Id.*) Finally, the Policy provides that if was an employee is ever unable to timely take their meal break, they are required to notify their supervisor before or at the time they were unable to take their meal break. (DSUF 45, 46.)

Additionally, at all relevant times inside The Forum, Sportservice posted Industrial Welfare Commission Wage Order 5-2001, which regulates conditions for meal and rest breaks. (DSUF 39, 63.)

Upon hire, Mejia signed a written waiver that reflected her decision to waive a meal break for shifts between 5 and 6 hours and a second meal break for shifts between 10 and 12 hours. (DSUF 51, 55, 56, 60.) Mejia understood that her election to waive would remain in effect unless she changed it, which she could do at any time. (DSUF 52, 57.) Mejia was able, and knew how, to change her election, but she never did. (DSUF 53, 54, 58, 59.) When Mejia reported that she did not take second meal breaks on non-waivable shifts (i.e., shifts over 12 hours), Sportservice paid her meal break premiums. (DSUF 61, 62.) On occasions when she did take a meal break, she was required to clock back in from her meal break exactly 30 minutes after she clocked out. (PAMF 80.)

**Rest Breaks**

The Policy also provides that non-exempt employees receive one paid 10-minute rest break for each 4-hour work period or major fraction of a work period that is longer than 2 hours. (DSUF 66, 67.) Specifically, the Policy provides that employees who work: (1) less than 3.5 hours in a day are not entitled to a rest break, (2) between 3.5 and 6 hours are entitled to one rest break, (3) between 6 and 10 hours are entitled to two rest breaks, and (4) between 10 and 12 hours are entitled to three rest breaks. (DSUF 67.) The Policy states that employees must monitor their rest breaks and ensure that they take their breaks every day. (*Id.*) If any employee is unable to take their rest break, the employee must notify their supervisor and a failure to do so may lead to discipline, at Sportservice's discretion. (*Id.*)

The Policy further states that during meal and rest breaks, employees are relieved of all work duties and obligations. (DSUF 46, 67.) As with meal breaks, employees taking rest breaks are permitted, but not required, to leave the premises. (DSUF 46, 48, 68.) Mejia, for her part, took her 10-minute rest breaks and was paid

premiums for the occasions when she reported that she did not take a rest break. (DSUF 71, 72.)

Mejia asserts that Sportservice, by requiring security screenings that would shorten her meal and rest breaks, discouraged her from leaving the premises during her breaks. (PAMF 79.) Sportservice disputes this contention by reasserting that it was The Forum, not Sportservice, that required the security checks and was responsible for facilitating and conducting the checks. (Defs.' Resp. PAMF 79, ECF No. 30.)

### *This Action*

Mejia originally brought this suit as a putative class action in state court, alleging seven claims against Sportservice for: (1) failure to pay wages for all hours worked (Cal. Lab. Code §§ 1194, 1197); (2) failure to pay overtime wages (Cal. Lab. Code §§ 510, 1194, 1198); (3) failure to provide meal breaks (Cal. Lab. Code §§ 512, 226.7); (4) failure to provide rest breaks (Cal. Lab. Code § 226.7); (5) failure to provide complete and accurate wage statements (Cal. Lab. Code § 226); (6) failure to pay all outstanding wages at end of employment (Cal. Lab. Code §§ 201, 202, & 203); and (7) unfair business practices (Cal. Bus. & Prof. § 17200). (Decl. Catherine S. Feldman ¶ 3, Ex. 1 ("Compl."), ECF No. 4.)

On October 19, 2020, Sportservice removed the action to this Court on the basis of Class Action Fairness Act ("CAFA") jurisdiction. (*See* Notice Removal 3–24, ECF No. 1.) However, the deadline for Mejia to file a motion for class certification was on April 4, 2022, and Mejia did not file any such motion. (*See* Scheduling & Case Management Order, ECF No. 13.) Accordingly, Mejia proceeds with only her individual claims. Sportservice now seeks summary judgment as to all seven of those claims. (*See* Mot.)

## III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

1  matter of law." Fed. R. Civ. P. 56(a).  The burden of establishing the absence of a
2  genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*,
3  477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable
4  inferences in the light most favorable to the nonmoving party, *Scott v. Harris*,
5  550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.
6  2000).  A disputed fact is "material" where the resolution of that fact might affect the
7  outcome of the suit under the governing law, and the dispute is "genuine" where "the
8  evidence is such that a reasonable jury could return a verdict for the nonmoving
9  party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Conclusory or
10 speculative testimony in affidavits is insufficient to raise genuine issues of fact and
11 defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738
12 (9th Cir. 1979).  Moreover, though the Court may not weigh conflicting evidence or
13 make credibility determinations, there must be more than a mere scintilla of
14 contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d at 1134.

15 Once the moving party satisfies its burden, the nonmoving party cannot simply
16 rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a
17 material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 322–23;
18 *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal.*
19 *Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468
20 (9th Cir. 1987).  A "non-moving party must show that there are 'genuine factual issues
21 that properly can be resolved only by a finder of fact *because they may reasonably be*
22 *resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468
23 (quoting *Anderson*, 477 U.S. at 250).  "[I]f the factual context makes the non-moving
24 party's claim implausible, that party must come forward with more persuasive
25 evidence than would otherwise be necessary to show that there is a genuine issue for
26 trial." *Id.* (citing *Matsushita Elec. Indus.*, 475 U.S. at 586–87).  "[U]ncorroborated
27 and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo*
28 *v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).  The court should grant

summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Sportservice seeks summary judgment for Mejia's First through Fourth Claims, arguing that, as a matter of law, there were no wage payment violations, no overtime violations, no meal break violations, and no rest break violations. Sportservice also argues that Mejia's Fifth and Seventh Claims fail as a matter of law because they are derivative of the first four claims, and Mejia's Sixth Claim fails as she lacks standing to bring it. The Court addresses each argument in turn.

### A. First & Second Claims: Failure to Pay Wages

Mejia asserts her First and Second Claims for Sportservice's failure to pay wages for all hours worked and overtime wages for the time Mejia spent undergoing the security checks before entering her workplace. Sportservice argues that these claims fail because Sportservice did not institute, and therefore did not control, the security checks and thus, are not responsible for the time employees spent undergoing those checks. (Mot. 5–9.)

California law requires all employers to pay their employees a minimum wage for all "hours worked." Cal. Code Regs., tit. 8, § 11070, subd. 4(B). "Hours worked" is defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Id.* § 11070, subd. 2(G). "[A]n employee who is *subject to the control* of an employer does not have to be working during that time to be compensated." *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1046 (2020), *reh'g denied* (May 13, 2020). Thus, when determining whether time spent undergoing security checks is compensable, the central question is whether the employee was subject to the employer's control during those checks. *See id.* at 1047.

### *1. Whether Sportservice Exercised Control Over Mejia*

Here, Sportservice contends that it did not exercise any control over the security checks and therefore, over Mejia, because the requirement is that of The Forum and not of Sportservice. Additionally, Sportservice cites to the undisputed fact that it did not actually conduct the security checks and that Sportservice had no role in determining what to inspect. (DSUF 9, 5, 24, 28.)  However, Mejia argues that Sportservice controlled the security checks because Sportservice's Work Rules explicitly state that employees are required to undergo such checks, and include instructions on where the employees should go and what they should do during the checks. (PSGD 3, 4.) The Work Rules instruct employees that the checks involve metal-detection or pat-down screening, and that earphones, headphones, and sunglasses must be removed before approaching the security entrance.[2] (PSGD 3, 4, 6–8.) Relying on deposition and declaration testimony, Mejia argues that because the Work Rules stated that the security checks were mandatory and provided instructions regarding the checks, Sportservice determined whether, who, how, and where to check-in for security purposes. (PSGD 6–8, 20, 23–27.)

On the one hand, a reasonable jury could find that such instructions are merely general, summary descriptions of the security check requirement and only demonstrate that Sportservice instructed its employees to undergo the security checks at the security check locations. Accordingly, a jury could find that the instructions do not demonstrate that Sportservice in any way determined or controlled, for example, the criteria an employee needed to meet in order to be cleared, what specific items or parts of the employee should be searched, what employees would be searched for, when an employee would be flagged for further screenings, and the procedures to

---

[2] Mejia also cites to the Work Rules' requirements that associates must store their belongings in clear bags, may never allow anyone else to use their identification card to enter the venue, and may never use their identification card to gain entry to an event at the venue when not scheduled to work. (PSGD 3, 4, 6–8.) However, Mejia fails to show how these requirements are specific steps of the security check process, and not general requirements for being on the premises.

follow in the event of a screen-fail. The instructions also fail to demonstrate that Sportservice communicated with the company or officers conducting the security screenings, had any opportunity to influence or review how the checks were conducted, or even had access to information regarding the status and outcomes of its employees' security checks. Thus, a reasonable fact finder could conclude that the Work Rules fail to connect the security checks to Sportservice in a meaningful or substantial way. And although Mejia cites to her own deposition testimony to illustrate the specific requirements and procedures of the security checks, Sportservice correctly argues that none of this "proves that Sportservice *control* the security checks." (emphasis added). (Reply 4.) Indeed, a mere recital of Mejia's experiences and observations during the security checks does nothing to connect those checks to Sportservice.

Nevertheless, on balance, the Court finds that a reasonable jury could also look at this evidence and conclude Sportservice had at least *some* control over the security checks and therefore, over Mejia. Accordingly, Mejia has raised a genuine dispute of material fact as to whether Sportservice exercised any control over the security checks and the Court cannot answer this factual question on summary judgment.

In addition to determining whether the employer exercises control over the activity, "courts may and should consider other additional relevant factors—including, but not limited to, the location of the activity, the degree of the employer's control, whether the activity primarily benefits the employee or employer, and whether the activity is enforced through disciplinary measures.'" (the "*Frlekin* factors"). *Frlekin*, 8 Cal. 5th at 1056. Though *Frlekin* provided "a number of factors to be considered in making this determination, it appears clear under the decision that an employer is much more likely to be found to be exercising control when the disputed act is required on the part of employees." *Boone v. Amazon.com Servs., LLC*, 562 F. Supp. 3d 1114 (E.D. Cal. 2022). The Court therefore first considers whether Sportservice required the security checks and then proceeds to analyze the *Frlekin* factors.

|   |   |
|---|---|
| 1 |                   2.     *Whether Sportservice Required the Security Checks* |

Here, the parties do not dispute that third-party The Forum required the security checks. (DSUF 13, 15.) Sportservice argues, therefore, that the security checks are not its own requirement. (Mot. 6.) Mejia contends that Sportservice essentially adopted The Forum's security check requirement by recognizing and reiterating it in Sportservice's Work Rules. (Opp'n 5–6.) However, Mejia does not cite to any apposite authority to support her contention that merely recognizing a third-party-instituted requirement, amounts to adoption of such requirement.

Indeed, the mere fact that an employee must adhere to a third party's rules or policies in order to enter the workplace, without more, does not automatically impute such rules or policies onto the employer. *See, e.g., Cazares v. Host Int'l, Inc.*, No. 20-55803, 2021 WL 3667227, at *1 (9th Cir. Aug. 18, 2021) (finding that the defendant's business inside of an airport could not be liable for the time its employee spent undergoing security screenings that were required and administered by a third party, without allegations that the defendant employer actually exercised some level of control over those screenings). Moreover, Mejia provides no evidence to demonstrate that Sportservice included new or additional requirements to the security screening processes that were not already imposed by The Forum. Thus, the Court finds that the security check requirement is that of The Forum, not Sportservice. This factor weighs against Sportservice's liability for Mejia's time undergoing the security checks.

                  3.     *The Frlekin Factors*

The Court analyzes each *Frlekin* factor in turn. As explained below, the Court finds that there are at least two genuine disputes of material fact with regard to these factors.

                  a.     <u>Location of the Security Checks</u>

Although neither party presents argument about the precise locations of the security checks, the Work Rules indicate that the security check process begins before employees entered The Forum. Specifically, the Work Rules provide that employees

must enter "the building using the 'tunnel' after getting wrist banded at the CSC tent on Pincay Boulevard. In the event the Associate entrance is closed, Associates should enter the building at the Security Command center entrance." (Decl. Romtin Parvaresh, Ex. A ("Mejia Dep."), Ex. 2 ("Work Rules"), ECF No. 22-2.) Both parties rely on the Work Rules and do not dispute them. Thus, the Court accepts as true, for purposes of the Motion, that the security checks at least commonly occurred at a tent on a street somewhere outside of Mejia's workplace in The Forum's building, lessening Sportservice's ostensible control over Mejia. However, the Court also acknowledges that security checks also may have occurred at the security center inside The Forum's building, increasing such control. Thus, on balance, the Court finds this factor is neutral.

### b. *Degree of Sportservice's Control*

"The *level* of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative." (emphasis added). *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 587 (2000), *as modified* (May 10, 2000). As stated above, the Court cannot determine at this time whether Sportservice exercised *any* control over the security checks. Accordingly, the degree of Sportservice's control, if any, is also a factual question that a jury must decide.

### c. *Whether the Security Checks Benefitted Mejia or Sportservice*

The Court next considers whether the security checks predominantly benefitted Sportservice or Mejia. Here, Sportservice argues that the security checks "are wholly unrelated to Sportservice's business and do not benefit Sportservice." (Mot. 8.) Sportservice contrasts this case from *Freklin* wherein the court found that the *exit* security checks were "imposed mainly for [the employer's] benefit by serving to detect and deter theft." (*Id.* (citing *Frlekin*, 8 Cal. 5th at 1052).) Sportservice concludes, "this case involves *entry* inspections by The Forum to prevent contraband and to protect public safety." (*Id.* (emphasis added).) However, Mejia argues that Sportservice did indeed enjoy the "benefit of contracting with the Forum and

providing a safe working environment for its employees and customers" noting that "the mandatory security screenings in this case are completely intertwined with its business interest as Defendants['] entire business is based on its contract with the Forum to provide concessions and other services at events held The Forum." (Opp'n 5.) The Court agrees that Sportservice does at least somewhat benefit from the security checks, and finds that a reasonable jury could conclude that either party predominantly benefits from the checks. Thus, Mejia has raised a genuine dispute of material fact as to which party predominantly benefitted from the security checks.

### d. Whether Sportservice Enforced the Security Checks Through Disciplinary Measures

Finally, the Court must consider whether Sportservice enforced the security check requirement by threatening or instituting disciplinary measures for non-compliance. Sportservice does not directly address this issue. But Mejia cites to the Work Rules, which states that "[a]ny [employee] who refuses to comply with security screening and/or any CSC Security directive may be subject to disciplinary action up to and including termination." (*See, e.g.,* PSGD 3, 4, 6, 7; *see also* Work Rules 17.) Mejia also cites to the undisputed fact that in September 2019, she was disciplined for entering her workplace through the back door in the back of the kitchen, in violation of the Work Rules. (PSGD 77.) The Court thus finds that Sportservice enforced the security checks through disciplinary measures, which weighs in favor of Sportservice's liability for Mejia's time spent undergoing those checks.

In conclusion, the Court finds that Sportservice did not require the security checks, which weighs against Sportservice's liability. The Court also finds, however, that Sportservice did enforce the security checks through disciplinary measures, which weighs in favor of Sportservice's liability. And the Court concludes that the location of the security checks is neutral and does not move the needle of this analysis either way. Finally, there is a genuine dispute of material fact as to the central question in this analysis: whether and to what degree Sportservice had control over the security

checks. There is also a genuine dispute of material fact as to whether Sportservice or Mejia predominantly benefitted from the security checks. The Court therefore cannot decide on summary judgment Sportservice's liability for Mejia's time spent undergoing the security checks. Thus, the Court **DENIES** Sportservice's Motion as to Mejia's First and Second Claims.

### B. Third Claim: Failure to Provide Meal Breaks

Sportservice seeks summary judgment as to Mejia's Third Claim for failure to provide meal breaks, arguing that Sportservice provided legally compliant meal breaks, posted notices of such meal breaks on the premises, and paid Mejia premiums for the meal breaks that she waived. (Mot. 9–16.)

An employer may not require an employee to work during a mandated rest or meal break. Cal. Labor Code § 226.7(a). But an employer "need not ensure that the employee does no work" during breaks. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1034 (2012). Rather, an "employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Id.* at 1040. That said, "[a]n employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." *Id.*

Here, Sportservice argues that it cannot be liable for meal break violations because it posted the applicable wage order at all relevant times inside The Forum and Mejia received and acknowledged Sportservice's Policy, which is consistent with the legal requirements for a meal break. (Mot. 11; DSUF 39, 40, 41, 44, 63, 65.) Sportservice also cites to its Policy to demonstrate Mejia was permitted, but never required, to leave the premises during her meal breaks. (DSUF 46, 48, 68.) Finally, Sportservice asserts that Mejia waived certain meal breaks through a valid written waiver, which she could change at any time. (DSUF 51, 55, 56, 60.) And Mejia received paid premiums for those meal breaks that she neither waived nor enjoyed.

(DSUF 61, 62.) Thus, Sportservice concludes that Mejia received all meal breaks to which she was entitled and Sportservice did not otherwise violate any meal break requirements. Mejia presents two arguments in opposition, neither of which the Court finds persuasive.

First, Mejia contends that Sportservice discouraged her from leaving the premises during her meal breaks because the security screening upon reentry would shorten her meal break. (Opp'n 11–13.) However, California law does not require employers to provide meal breaks during which their employees can easily leave and return to the premises, without any temporal cost or inconvenience. The law only requires that employers relinquish control over their employees during such breaks and not discourage them from taking the breaks.[3] *Brinker*, 53 Cal. 4th at 1040. And Mejia agrees that Sportservice never required her to leave The Forum during her meal breaks. Accordingly, Sportservice neither had an obligation to facilitate convenient offsite meal breaks nor forced Mejia to take her meal breaks offsite. Sportservice therefore cannot be liable for Mejia feeling discouraged from leaving The Forum during her meal breaks.

Next, Mejia contends that she was not relieved of all duty during her meal breaks because she was forced to "work" during them by undergoing security screenings. This argument also fails for the same reason: Sportservice was not required to facilitate offsite meal breaks and did not require Mejia to take her meal breaks offsite. Accordingly, any security check Mejia underwent during her meal breaks was her choice alone and thus not compensable by Sportservice. Accordingly, the Court **GRANTS** Sportservice's Motion as to Mejia's Third Claim.

### C. Fourth Claim: Failure to Provide Rest Breaks

Sportservice seeks summary judgment on Mejia's Fourth Claim for failure to

---

[3] Mejia improperly cites to *Bono Enterprises, Inc. v. Bradshaw* for the proposition that employers *are* required to provide offsite meal breaks. (Opp'n 12 (citing 32 Cal. App. 4th 968, 975 (1995)).) However, this standard applies to the federal Fair Labor Standards Act, not the California state laws under which Mejia brings her claims.

provide rest breaks, setting forth arguments similar to Sportservice's meal break arguments. Sportservice contends it complied with all legal requirements to provide Mejia with rest breaks. (Mot. 16–20.) Mejia similarly opposes these contentions by asserting that the security screenings discouraged her from taking her rest breaks. (Opp'n 13–15.) The Court's disposition on this issue is the same as its conclusion regarding Mejia's meal breaks. Without a legal duty to provide rest breaks offsite, or without evidence that Sportservice forced Mejia to take her rest breaks offsite, Sportservice cannot be liable for Mejia's choice to subject herself to the security checks. Because Sportservice has demonstrated that it provided Mejia with legally compliant rest breaks, and Mejia has not demonstrated any actual rest break violation, Sportservice is entitled to summary judgment. Accordingly, the Court **GRANTS** Sportservice's Motion as to Mejia's Fourth Claim.

### D. Fifth Through Seventh Claims: Derivative Claims

Finally, Sportservice seeks summary judgment as to Mejia's Fifth and Seventh Claims arguing that they are derivative of Mejia's First through Fourth Claims, and arguing that Mejia lacks standing to bring her Sixth Claim. (Mot. 20–22.) However, as stated above, the Court finds that genuine issues of material fact preclude summary judgment on Mejia's First and Second Claims and thus, Mejia's Fifth Claim remains viable to that extent. Accordingly, the Court **DENIES** Sportservice's Motion as to Mejia's Fifth Claim.

Sportservice next argues that it is entitled to summary judgment on Mejia's Sixth Claim for waiting time penalties for the same reasons stated above, but also argues that Mejia lacks standing to bring such a claim because she is still employed by Sportservice. (Mot. 21–22.) Indeed, a plaintiff does not have standing to bring a cause of action for failure to timely pay wages after the termination of employment, when that employee has not been terminated. *See, e.g., Alvarez v. Hyatt Regency Long Beach*, No. CV094791GAFVBKX, 2009 WL 10673222, at *4 (C.D. Cal. Aug. 6, 2009). As the parties do not dispute that Mejia remains employed by Sportservice,

Mejia does not have standing to bring her Sixth Claim. The Court thus **GRANTS** Sportservice's Motion as to Mejia's Sixth Claim.

Finally, Sportservice argues that Mejia's Seventh Claim for unfair business practices is derivative of her underlying claims and should therefore fall with them. (Mot. 22.) However, as some of Mejia's underlying claims remain intact, so does this one. Thus, the Court **DENIES** Sportservice's Motion on Mejia's Seventh Claim.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Sportservice's Motion for Summary Judgment as to Mejia's Third, Fourth, and Sixth Claims, and **DENIES** the Motion as to all other claims. (ECF No. 22.) Additionally, on August 11, 2022, the parties filed a Stipulation to continue the trial and related dates because the Court had not yet resolved the Motion. (ECF No. 36.) As the Court has now resolved the Motion, the Court **DENIES as MOOT** the parties' Stipulation.

**IT IS SO ORDERED.**

August 15, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**